FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N :

★ JUN 0 6 2011

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MARLENE BEDEAU, THEODEL MOLLY BEDEAU,
O.B., a minor by her mother and legal guardian LUCY
BEDEAU,

Plaintiffs,

-against-

THE CITY OF NEW YORK, DETECTICE TIMUR
EVREN, tax # 932615, JOHN AND JANE DOES 1-10,

Defendants.

------------------------------------------------------------------------ x

**COMPLAINT**

CV11 - 2697

Jury Trial Demanded

SUMMONS ISSUED

BLOCK, J.

J. ORENSTEIN, M.J.

## PRELIMINARY STATEMENT

1.    This lawsuit arises out of the unlawful arrests of plaintiffs by New York

City Police Officers of the troubled Brooklyn South Narcotics Division in plaintiff Marlene

Bedeau's home on October 29, 2010.  Marlene, a 69- year-old woman with no arrest or criminal

history who walks with a cane and sings in a church choir, has lived in the home, apartment #

1448 at 2750 West 33rd Street in Brooklyn, since 1980 without incident.  On the date in question,

Marlene's daughter Theodel Molly ("Molly") and Marlene's teenage granddaughter O.B. who,

like Marlene, do not have arrest or criminal histories, had spent the night at Marlene's apartment.

New York City Police Officers raided the home, apparently by mistake, and, in an effort to

justify their actions and cover up their misconduct, charged plaintiffs with possession of drug

paraphernalia because Marlene, like everyone else in America, had sandwich bags in her kitchen.

Defendants attempted to have plaintiffs prosecuted on the bogus charge, but the Kings County

District Attorney's Office would have none of it and declined to prosecute plaintiffs which ended

the case.  Defendants, however, have not given up; they have instigated eviction proceedings

against Marlene which are pending as of the date of this complaint.  By this complaint, plaintiffs

Case 1:11-cv-02697-FB -JO    Document 1    Filed 06/06/11    Page 2 of 11

are now suing the City of New York and numerous New York City Police Officers of the

Brooklyn South Narcotics Division alleging that defendants violated their rights under 42 U.S.C.

§ 1983, the Fourth Amendment to the United States Constitution and New York state law

seeking compensatory and punitive damages in an amount to be determined by a jury, attorney's

fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth

Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28

U.S.C. §§ 1331 and 1343.

3.      Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28

U.S.C. § 1367 to hear and decide their New York state law claims of false arrest, assault, battery,

trespass, conversion and intentional infliction of emotional distress brought against the individual

defendant police officers. These state law claims form part of the same case and controversy as

plaintiffs' federal claims under Article III of the United States Constitution.

4.      Because plaintiffs' state law claims are brought only against the individual

defendant police officers and allege intentional conduct, no notice of claim is required. In suits

against municipal or county employees, as opposed to suits against municipalities or counties

themselves, "service of the notice of claim upon the public corporation shall be required only if

the corporation has a statutory obligation to indemnify such person under this chapter or any

other provision of law." N.Y. Gen. Mun. Law § 50-e(1)(b). Although a municipality is required

to "indemnify and save harmless its employees in the amount of any judgment obtained against

such employees in any state or federal court, ... the duty to indemnify and save harmless ... shall

2

not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." N.Y. Gen. Mun. L. § 50-k(3).

5.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District and because some or all of the defendants reside in this District.

## PARTIES

6.     Plaintiffs are residents of Brooklyn.  Marlene suffers from several ailments, including diabetes, and has had knee replacements, which has resulted in her having to walk with a cane.

7.     The City of New York is a municipal corporation organized under the laws of the State of New York.

8.     Detective Timur Evren and John and Jane Does 1-10 are New York City Police Officers employed in the Brooklyn South Narcotics Division   Defendants were acting under color of state law and in their capacities as New York City Police Officers at all relevant times.  Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiffs from unconstitutional conduct.  The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

9.     On October 28, 2010, at approximately 6:45 p.m., Marlene exited her apartment, # 1448 at 2750 West 33rd Street in Brooklyn, to attend church choir practice and was confronted in the hallway by three of the defendant officers -- two white men and one white woman.

10.     Defendants asked plaintiff if she knew the location of apartment # 1558.

3

11    Marlene told the defendants that they were on the wrong floor and the conversation ended.

12.    On October 29, 2010, at approximately 5:30 a.m., while plaintiffs were sleeping, numerous officers of the Brooklyn South Narcotics Division broke down Marlene's front door and entered the apartment.

13.    The officers did not show a warrant.

14.    One of the male officers grabbed Marlene by her shoulders and violently threw her onto the ground.

15.    The officer's actions caused Marlene to strike her head and body and caused her right breast to fall out of her pajamas.

16.    Other officers forcefully seized Molly and O.B., who were sleeping elsewhere in the apartment.

17.    The officers ordered the three plaintiffs to tell them "where the drugs are," to which plaintiffs responded that there were no drugs and that the officers had made a mistake.

18.    The officers then threatened to "flip" the house and, true to their word, ransacked the apartment.

19.    The officers did not recover any narcotics or anything illegal but, in an effort to justify their actions and cover up their misconduct, charged plaintiffs with possession of drug paraphernalia because Marlene, like everyone else in America, had sandwich bags in her kitchen.

20.    Approximately one hour after plaintiffs were seized, several of the officers put plaintiffs in a van and had them sit in the van for approximately 45 minutes.

4

21.     Marlene complained to officers about the position in which the officers made her sit as her bad knees were causing her excruciating pain.

22.     The officer ignored Marlene's complaints.

23.     Eventually, plaintiffs were taken to the 60th Precinct for arrest processing and placed in a cell.

24.     While plaintiffs were being held, their designated "arresting officer," Detective Timur Evren, with the acquiescence of the other officers, misrepresented in police reports that plaintiffs were found in possession of drug paraphernalia.

25.     Defendants' motives in filing bogus charges against plaintiffs was to cover up their misconduct, obtain overtime compensation and obtain credit for a narcotics arrest

26.     Marlene complained about her health while in the precinct.

27.     Defendants, concerned solely about protecting themselves and not with helping Marlene, released Marlene from the precinct at approximately 10:30 a.m. with a Desk Appearance Ticket ordering her to appear in Criminal Court on December 9, 2010.

28.     Molly and O.B. were taken to Brooklyn Central Booking.

29.     While plaintiffs were in Central Booking, Detective Evren, with the acquiescence of the other officers, misrepresented to the Kings County District Attorney's Office that plaintiffs were found in possession of drug paraphernalia.

30.     The Kings County District Attorney's Office realized the allegation was bogus, declined prosecution and arranged for Molly and C.B. to be released from Central Booking.

31.     Molly and O.B. were released during the evening of October 29, 2010, at approximately 8:30 p.m.

32.     Marlene obtained medical treatment on October 30, 2010.

33.     Although the bogus charge was dismissed, defendants have not given up. As of the date of this complaint, eviction proceedings are pending against Marlene premised on defendants' false allegation that Marlene had engaged in illegal narcotics activity in her apartment.

34.     Marlene, subsequent to her case being dismissed, but before retaining the undersigned, filed a complaint with the Civilian Complaint Review Board.

35.     Marlene subsequently withdrew her CCRB complaint after being advised by the undersigned that CCRB takes the NYPD's side in the overwhelming majority of cases and that cooperating with CCRB is a waste of time.

36.     As a result of defendants' conduct, plaintiffs suffered damages including the trauma of incarceration, emotional distress, fear, anxiety, humiliation and damage to reputation. In addition, Marlene suffered pain and bruising. Finally, plaintiffs had to restore Marlene's ransacked home to its original condition,

## FIRST CLAIM
### (FALSE ARREST)

37.     Plaintiffs repeat the foregoing allegations.

38.     At all relevant times, plaintiffs had not committed a crime or violation and had not acted in a suspicious manner.

39.     Despite plaintiffs' innocence, the defendants arrested plaintiffs or failed to intervene to prevent their false arrests.

40.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for false arrest.

6

## SECOND CLAIM

### (UNREASONABLE FORCE)

41.     Plaintiffs repeat the foregoing allegations.

42.     Defendants' use of force upon Marlene Bedeau or their failure to intervene to prevent the use of force on her, as described herein, was objectively unreasonable and caused plaintiff pain and injury.

43.     Accordingly, defendants are liable to Marlene Bedeau under the Fourth Amendment for using unreasonable force.

## THIRD CLAIM

### (UNLAWFUL ENTRY AND SEARCH OF HOME)

44.     Plaintiffs repeat the foregoing allegations.

45.     Defendants entered and searched Marlene's apartment without showing a warrant, unnecessarily ransacked the premises and destroyed the front door.

46.     Accordingly, defendants are liable to Marlene Bedeau under the Fourth Amendment for the unlawful entry and search of her home.

## FOURTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

47.     Plaintiffs repeat the foregoing allegations.

48.     The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

49.     The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

50.     Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of the NYPD, particularly narcotics officers,

7

are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

51.    Several members of the NYPD have been convicted of crimes for engaging in corruption, for making false allegations and for other criminal activity.

52    Former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison.

53.    In 2011, former Brooklyn South Narcotics Division officer Jerry Bowen was convicted of murder and attempted murder while he was under indictment for corruption.

54.    In *Colon v. City of New York,* Nos. 09 CV 8, 09 CV 9 (JBW), 2009 WL 4263362 (E.D.N.Y. November 25, 2009), the federal court stated that an "[in]formal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."

55.    Defendant Evren was sued for civil rights violations in *Axil Martinez v. City of New York, et al.*, 10 CV 0671 (E.D.N.Y.), which the City settled, and *Joseph Liquiori v. City of New York, et al.*, 10 CV 1779 (E.D.N.Y.), which the City settled.

56.    Despite the above, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

57.    The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

8

## FIFTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

58.    Plaintiffs repeat the foregoing allegations.

59.    At all relevant times, plaintiffs had not committed a crime or violation and had not acted in a suspicious manner.

60.    Despite plaintiffs' innocence, the defendants arrested plaintiffs or failed to intervene to prevent their false arrests.

61.    Accordingly, defendants are liable to plaintiffs under New York state law for false arrest.

## SIXTH CLAIM

### (ASSAULT)

62.    Plaintiffs repeat the foregoing allegations.

63.    Defendants' use of force upon Marlene Bedeau placed her in fear of imminent harmful and offensive physical contacts which injured her.

64.    Accordingly, the individual defendants are liable to Marlene Bedeau under New York state law for assault.

## SEVENTH CLAIM

### (BATTERY)

65.    Plaintiff s repeats the foregoing allegations.

66.    Defendants' use of force upon Marlene Bedeau was an offensive and nonconsensual physical contact which injured her.

67.    Accordingly, the individual defendants are liable to Marlene Bedeau under New York state law for battery.

9

## EIGHTH CLAIM

### (TRESPASS)

68.     Plaintiffs repeat the foregoing allegations.

69.     Defendants entered and searched Marlene Bedeau's apartment without showing a warrant, ransacked the premises and destroyed the front door.

70.     Accordingly, the individual defendants are liable to Marlene Bedeau under New York State law for trespass.

## NINTH CLAIM

### (CONVERSION)

71.     Plaintiffs repeat the foregoing allegations.

72.     Defendants entered and searched Marlene Bedeau's apartment without showing a warrant, ransacked the premises and destroyed the front door.

73.     Accordingly, the individual defendants are liable to Marlene Bedeau plaintiffs under New York State law for conversion.

## TENTH CLAIM

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

74.     Plaintiffs repeat the foregoing allegations.

75.     Defendants' actions in making false allegations about Marlene Bedeau, arresting her, beating her and seeking to evict her from her home where she has resided since 1980 amounts to conduct intolerable in a civilized society which has caused plaintiff emotional distress

75.     Accordingly, the individual defendants are liable to Marlene Bedeau under New York State law for intentional infliction of emotional distress.

10

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

      a.      Compensatory damages in an amount to be determined by a jury;

      b.      Punitive damages in an amount to be determined by a jury;

      c.      Attorney's fees and costs;

      d.      Such other and further relief as the Court may deem just and proper.

DATED:      June 6, 2011

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391

11